**SO ORDERED.**

**SIGNED this 17 day of January, 2007.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
   John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **CONSOLIDATED STONEWORKS, INC.** | ) | **No. 04-15922** |
| | ) | **Chapter 7** |
| **Debtor** | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| **THOMAS E. RAY, TRUSTEE** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Adversary No. 06-1066** |
| | ) | |
| **ROBERT M. ALLEN, II, STONE** | ) | |
| **MASONS SUPPLY OF ATLANTA, LLC,** | ) | |
| **STONE MASONS SUPPLY OF NORTH** | ) | |
| **CAROLINA, LLC, STONE MASONS** | ) | |
| **SUPPLY OF FLORIDA, LLC and** | ) | |
| **ROBERT M. ALLEN, II AND GALE T.** | ) | |
| **ALLEN AS CO-TRUSTEES OF THE** | ) | |
| **GALE T. ALLEN LIVING TRUST** | ) | |
| | ) | |
| **Defendants** | ) | |

**MEMORANDUM**

This is a proceeding brought by the trustee to recover five alleged preferential transfers. The proceeding is now before the court on defendants' motion for summary judgment. For the reasons stated below, the court will grant the motion in part and deny it in part.

I.

The debtor, Consolidated Stoneworks, Inc., is wholly owned by its chief executive officer, Donald Ashlock. It contracted to buy certain assets owned by defendant Robert Allen or his companies, Stone Masons Supply of Atlanta, Stone Masons Supply of North Carolina, and Stone Masons Supply of Florida, and to finance its purchases of these assets the Debtor turned to the Hulsey Foundation, a private venture capitalist organization presided over by its founder and president, William Hulsey. The Debtor borrowed from the Hulsey Foundation, in part at least, because the debtor's principal, Don Ashlock, was also the secretary and managing director of the Hulsey Foundation. As such, he could make disbursements from the Foundation's bank accounts not exceeding $20,000.00 by his signature alone. For disbursements in excess of that amount, two signatures were required on the instrument.

At issue in this case are five wire transfers alleged by the trustee to be avoidable preferences under 11 U.S.C. § 547(b):

1. $200,000.00 wire transfer from the Hulsey Foundation to Stone Masons Supply of Atlanta on June 15, 2004.
2. $120,233.95 wire transfer from the Hulsey Foundation to Robert M. Allen on July 13, 2004 (deposited into the account of Stone Masons Supply of Atlanta).
3. $11,166.50 wire transfer from the Hulsey Foundation to Robert Allen on July 13, 2004.

    4.    $11,166.50 wire transfer from the Hulsey Foundation to Robert Allen on August 5, 2004.

    5.    $41,833.50 wire transfer from the Hulsey Foundation to Stone Masons Supply of Atlanta on August 5, 2004.

Because all the wire transfers to the defendants and their associated entities were made by the Hulsey Foundation and proceeded directly from the bank account of the Hulsey Foundation to the bank accounts of the defendants, the debtor never had actual possession of any of the funds in question, at least inasmuch as none of the funds in question ever passed through the debtor's bank accounts. In exchange for making these wire transfers to the defendants, however, the Hulsey Foundation received from the debtor a note for $2,250,000.00 dated January 1, 2004, but in fact executed in August 2004 (sometime after the first three transfers at issue in this action). In effect then, the debtor borrowed money from the Hulsey Foundation and had the funds transferred directly by wire to Allen or his company, Stone Masons Supply of Atlanta. When the debtor filed its petition in bankruptcy, the Hulsey Foundation duly filed a proof of claim which includes all of the loans represented by the wire transfers mentioned.

II.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c). A district court's grant of summary judgment is reviewed de novo. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1472 (6th Cir.1988). This court must view all the facts and inferences drawn therefrom in the light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

When a motion for summary judgment has been filed, the moving party carries the initial burden of showing that no genuine issue of material fact exists. In the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings, but must come forward with some probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *60 Ivy St. Corp.*, 822 F.2d at 1435. As is provided in Federal Rule of Civil Procedure 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

This means that summary judgment is appropriate against a party

> who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. at 322-23.

### III.

The trustee's action is one to avoid preferential transfers. The first requirement of such an action is that the transfer to be avoided must be a "transfer of an interest of the debtor in property." 11 U.S.C. § 547(b). Only transfers of property in which the debtor has an interest may be avoided under the preference section, and the defendants contend that the debtor had no interest in any of the five wire transfers from the Hulsey Foundation to the defendants. Because loan pro-

-4-

ceeds were the subject of the transfers in question, defendants rely on the earmark doctrine, which, if it is applicable, operates to nullify the debtor's apparent interest in the property transferred and thus forestalls the application of § 547(b) by the trustee.

The earmark doctrine is recognized in the Sixth Circuit, which has stated the rule as follows:

> [T]here is an important exception to the general rule that the use of borrowed funds to discharge the debt constitutes a transfer of property of the debtor: where the borrowed funds have been specifically earmarked by the lender for payment to a designated creditor, there is held to be no transfer of property of the debtor even if the funds passed through the debtor's hands in getting to the selected creditor."The courts have said that even when the [lenders] knew [earmarked] funds are placed in the debtor's possession before payment to the old creditor, they are not within the debtor's 'control.'"

*McLemore v. Third Nat'l Bank (In re Montgomery)*, 983 F.2d 1389, 1395 (6th Cir. 1993) (citing *Mandross v. Peoples Banking Co. (In re Hartley)*, 825 F.2d 1067, 1070 (6th Cir. 1987); *In re Smith*, 966 F.2d 1527, 1533 (7th Cir. 1992)) (citing and quoting *McCuskey v. Nat'l Bank (In re Bohlen Enters., Ltd.)*, 859 F.2d 561, 564-66 (8th Cir. 1988)).

The court's citation of *In re Bohlen* is significant because that Eighth Circuit case has established a widely followed three part test for application of the earmarking doctrine, a test that is followed by the courts of this circuit. In *Peoples Bank & Trust Co. v. Burns*, 95 F. App'x 801, 804 (6th Cir. 2004), the court, after noting its earlier approval of the earmarking doctrine in *In re Montgomery*, went on to employ the *Bohlen* test:

> In *Bohlen*, the Eighth Circuit identified three requirements that a transaction should meet in order to qualify for the earmarking doctrine: (1) the existence of an

> agreement between the new lender and the debtor that the new funds would be used to pay a specified antecedent debt, (2) performance of that agreement according to its terms, and (3) the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate.

*Id.*; *see also Wilson v. Chamness (In re Green Valentine, Inc.)* 330 B.R. 880 (B.A.P. 6th Cir. 2005) (unpublished table decision), *available at* 2005 WL 2173828, at *2.

The parties agree that the debtor entered into an asset purchase agreement with Allen to buy equipment and to rent certain properties to be used in its stone quarrying operations. It then borrowed money from the Hulsey Foundation as necessary to pay Allen. It is undisputed that the foundation acted through its board of directors when approving loans. Because Ashlock wore two hats, one as board member and managing director of the Hulsey Foundation and the other as CEO of the debtor, the parties have found fertile ground for disagreement over whether the debtor *controlled* any of the funds in question to the extent necessary to have an avoidable interest in them. However, under the earmarking doctrine, as delineated in *In re Bohlen* and as adopted by the Sixth Circuit, the first and crucial question to be answered is whether the Hulsey Foundation, as the new lender, had an *agreement* with the debtor that the funds it loaned would be used to pay a specified debt, in this case, the obligation to one or more of the defendants.

Where there is such an agreement and that agreement is carried out, the earmark doctrine functions as an answer to the question of a debtor's control over loan proceeds: he is legally deemed to have insufficient control if he has previously agreed with the lender that the proceeds would pass to the agreed-upon recipient in such a way that the debtor either (1) had no control over them or (2) renounced control over them, even though they might temporarily come into his

possession for the purpose of disbursement. *Adams v. Anderson (In re Superior Stamp & Coin Co.)*, 223 F.3d 1004, 1008 (9th Cir. 2000); 5 *Collier On Bankruptcy* ¶ 547.03[2] (Alan N. Resnick & Henry J. Sommers, eds., 15th ed. rev. 2006) ("The rule is the same regardless of whether the proceeds of the loan are transferred directly by the lender to the creditor or are paid to the debtor with the understanding that they will be paid to the creditor in satisfaction of his claim, so long as the proceeds are clearly 'earmarked.'"). What the earmarking doctrine really does, then, is pretermit the issue of control. If the debtor agrees that the funds he borrows are destined for a particular creditor, then he is deemed to be without control over the funds. Moreover, no diminution of the estate occurs if the agreement is carried out: because the debtor has no interest in the funds transferred, the estate loses nothing by the transfer.

When the five transfers involved in this case are analyzed, they can be grouped into two sets according to their origins. Four of the transfers were the results of normal loans from the Hulsey Foundation to the debtor. One, the transfer of $120,233.95, is the result of emergency action by Hulsey himself, quite possibly without the formal approval of the foundation. Taking up the later first, the undisputed facts are that Allen, bypassing Ashlock and the debtor, telephoned Hulsey directly to complain that he was not being paid according to the contract. Hulsey testified in deposition that, in response to Allen's telephone call and in order to save the deal, he transferred $120,000.00 of his personal money to the Hulsey Foundation and then authorized the wire transfer in question to Allen. He further testified that Ashlock did not request this loan initially, that it was Hulsey's idea to do it in order to keep Allen from withdrawing from the deal and instituting legal action, and that the wire transfer was approved by himself and Ashlock. Because of

the urgency of the situation, the foundation's board of directors was not involved and therefore did not approve this transfer as a foundation loan.

These circumstances demonstrate that Hulsey himself, as president of the Hulsey Foundation and the donor of the funds, specified the recipient of the proceeds of the loan. Indeed, his deposition testimony was that the sole purpose of this loan was to transfer funds immediately to an upset creditor of the debtor, one who was threatening to withdraw from the deal if not paid. This loan, therefore, was earmarked for Allen by Hulsey. If the transfer was later approved by the foundation and ratified by it as a loan for the benefit of the debtor,[1] then it must be considered to have been earmarked because that was Hulsey's firm intention.

A debtor's lack of an interest in loan proceeds may be demonstrated by application of the earmarking doctrine, but of course it may also be shown directly. Alternatively, and notwithstanding the earmark doctrine, it is apparent that the debtor never had any control over the funds wired to Allen, and control is a key to the debtor's interest. *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1360 (5th Cir. 1986) ("[T]he debtor's lack of dispositive control must be proven. Demonstrating the third party's intent is one way of doing this, but we do not believe it is the exclusive method, especially if there is adequate proof of lack of control by a debtor."). The funds in question first belonged to Hulsey, who deposited them to the foundation's account with the sole intent that they be wired to Allen to stave off disaster. The funds never came into any account rightfully controlled by the debtor, and the debtor was permitted no discretion in their

---

[1] It appears that the foundation included this transfer in its proof of claim against the debtor, treating it as a loan to the debtor.

disbursement. Indeed, the transfer bypassed the debtor completely, although made partially for its benefit. Under these circumstances, in which the debtor had neither apparent title to the funds nor any control over them, the trustee cannot succeed in showing that the debtor ever had an interest in them. Therefore this transfer to Allen could not be preferential, and summary judgment for the defendants is appropriate with respect thereto.

As for the other four transfers in this case, there is no evidence that any of them was earmarked for the defendants. Hulsey had no particular recollection of any of them. Neither Ashlock nor Hulsey testified in their depositions as to any restrictive agreement about the disposition of any of the loans. Although there is evidence that every loan had to be approved by the Hulsey Foundation's board of directors, there is no evidence that any of these four loans were restricted by the board and designated to anyone other than the debtor. In fact, Hulsey's deposition testimony gives the impression that the foundation imposed no restraints on the use of loan funds once the loan was approved for the debtor. He testified that "[o]nce it had been approved by the board, [Ashlock] got approval with anticipation of his needs for the next period of time. He would draw it out as those demands were required." [*sic*] (Hulsey Dep. at 25.) He went on to state that "[t]here were no monies approved or earmarked for Stone Masons Supply, to my knowledge. It was a general note of obligation and for Consolidated Stone's growth and development." (Hulsey Dep. at 26.)

Of course, the defendants would like the court to infer that there must have been an agreement between the debtor and Hulsey as to the disposition of loan proceeds because in fact all the transfers were direct from the Hulsey Foundation to one of the defendants and because

-9-

Ashlock, while wearing both hats as managing director of the Hulsey Foundation and CEO of the debtor, meant to restrict the loan proceeds to the defendants. Ashlock, however, never testified to that effect, and according to other testimony it was the board of directors which had approval authority for all loans. Thus, it appears that restrictions of the loan proceeds to a particular recipient would have to have been made by the board. Since there is no documentary evidence of board approval for any of these loans and since the minutes of the board actions that allegedly approved these loans are unavailable, it is as likely as not that the board approved the loans to the debtor *without* restrictions and that the debtor merely used the banking machinery of the Hulsey Foundation to effectuate wire transfers to whichever creditors it chose. As Hulsey testified, "The weakness of that was, once the board approved a loan to him, he didn't transfer it into Consolidated Stone and pay payments out of Consolidated Stone. He used the Hulsey Foundation account as - - for distribution to his accounts." Hulsey was then asked whether Ashlock "just used the Hulsey Foundation account as he would the Consolidated Stone account . . . ." His answer was, "That is correct."

From all the depositions and affidavits filed in the case, the court cannot discern with any reliability the existence of an agreement between the Hulsey Foundation and the debtor with respect to any of these four loans. The court has a limited power to draw inferences from the facts of the case but, since "inference-drawing is a type of fact finding," *United States v. Smyth*, 72 F.3d 1433, 1435 (9th Cir. 1996), the court must proceed with great caution and must obey the rule that "[o]n summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). For the foregoing reasons, the court

declines to apply the earmarking doctrine to any of the four loans at issue here and it will accordingly deny summary judgment as to them.[2]

IV.

The defendants also contend that three of the transfers involve contemporaneous exchanges for new value and as such are shielded from avoidance by the operation of 11 U.S.C. § 547(c)(1). The statute provides that a trustee may not avoid a transfer if (1) the transfer was intended by the debtor and his transferee to be a contemporaneous exchange for new value given to the debtor, and (2) the exchange was substantially contemporaneous. The undisputed testimony in this case concerning the two transfers of $11,166.50 is that they were rent payments to Allen and his companies in return for which the debtor was permitted to use the property. Indeed, the Asset Purchase Agreement between the debtor and Allen requires the debtor to assume the leases in question, and Allen's affidavit recites that the two transfers were rent payments and, in paragraph 6, that they were received in the months of July and August, 2004. However, it does not state when they were due. The leases in question recite that rent payments are to begin June 1, 2004. The statute requires that the transfers be in fact "substantially contemporaneous" before they

---

[2] The defendants have also advanced the theory that the debtor lacked any interest in the loan proceeds in question because Tenn. Code Ann. § 29-2-101(a)(5) requires contracts that cannot be completed in a year to be in writing and because Tenn. Code Ann. § 29-2-101(b)(1) requires loan commitments to be in writing to be enforceable against the lender. Neither statute is relevant. This proceeding does not involve any action by the debtor against Hulsey Foundation to force it to make a loan or to recover damages for its failure to do so. Moreover, there has been no action between the foundation and the debtor to recover on any note or obligation to repay. All the testimony in this case is to the effect that the loans were intended by the parties and were in fact made as intended. Thus, the statutes do nothing to prevent the debtor from having an interest in loans in fact made to it. At most they are waivable, affirmative defenses intended for situations not relevant to this case.

-11-

come within the defense provided by § 547(c), but the defendants have failed to point out undisputed evidence showing that these rental payments were substantially contemporaneous with their due dates. *See Grogan v. Laland Inv. (In re Garrett Tool & Eng'g, Inc.)*, 273 B.R. 123, 126 (E.D. Mich. 2002) (holding that rental payments made within a few days of their due dates were substantially contemporaneous). The court must therefore deny summary judgment to the defendants with respect to these two transfers.

The defendants also contend that $138,500.00 of the $200,000.00 transfer made on June 15, 2004, was a contemporaneous exchange for new value. On that same date, according to Allen's affidavit, Allen conveyed to the debtor five pieces of equipment by bills of sale. The combined price of the equipment, as shown on the bills of sale, was $138,500.00. The Asset Purchase Agreement entered into between the debtor and Allen required the debtor to purchase this equipment by June 15, 2004. Since the bills of sale for the equipment sold by Allen and the transfer of funds by the debtor to buy it occurred within a few days of each other and since the contract obligated the buyer to buy this equipment and the seller to sell it, it would seem apparent that the parties intended this to be a contemporaneous exchange and that in fact it was one.

The trustee, however, argues that the transfer was not substantially contemporaneous because Allen, according to his testimony, allowed the debtor to use the equipment beginning on or about June 1, 2004, when the debtor took possession of the stone yards. The equipment was positioned in the stone yards at the time debtor took possession of them. Allen testified that he did not intend to convey any interest in the equipment until he had been paid for it under the terms of the Asset Purchase Agreement. He was not paid until June 15, 2004, whereupon he executed the

aforesaid bills of sale. The court disagrees with the suggestion that a temporary loan of the use of equipment constitutes the kind of exchange contemplated by § 547(c)(1). The idea behind the statute is that nothing deleterious has occurred to the creditors if the transfer of property out of the estate is balanced by a transfer of comparably valued property into it and the two acts occur contemporaneously enough to escape being branded as the payment of an antecedent debt. Where the intent of the seller was not to part with title until paid in full, where he did not part with title until paid in full, and where the parting and the payment were within a day of each other, both the letter and the purposes of § 547(c)(1) have been served. A temporary, informal license to use equipment pending the exchange would not corrupt the contemporaneity of the only exchange that mattered to the creditors of the estate: the exchange of title for payment. Accordingly, the court will grant the defendants' motion for summary judgment with respect to part of the $200,000.00 transfer and hold that $138,500.00 of that sum may not be avoided by the trustee.

V.

Finally, the defendants renew the arguments previously made in their motion to dismiss, which argued that principles of preclusion, i.e., res judicata, collateral estoppel, and judicial estoppel, prevent the trustee from litigating the instant complaint to avoid preferences. The court has already ruled on these legal issues in its memorandum of July 7, 2006, regarding defendants' motion to dismiss. The court will adhere to those views, and to the extent necessary they are incorporated herein by reference. Summary judgment for the defendants is not appropriate on principles of preclusion.

VI.

For the foregoing reasons, the court will grant summary judgment to the defendants with respect to the transfer of $120,233.95. Summary judgment will also be granted in favor of the defendants with respect to $138,500.00 of the $200,000.00 transfer. The lesser figure represents money paid according to contract in order to buy equipment from the defendants. Accordingly, it is a contemporaneous exchange for new value and to that extent it is not avoidable by the trustee. In all other respects the motion for summary judgment will be denied.

An order will enter in accordance with this memorandum.

###